13 P.(2d) 554

## STATE v. CONWELL.

### No. 3767.

Supreme Court of New Mexico.

July 15, 1932.

Charles F. Fishback, of Ft. Sumner, for appellant.

E. K. Neumann, Atty. Gen., and Quincy D. Adams, Asst. Atty. Gen., for the State.

SADLER, J.

The appellant, who will be designated as defendant herein, was convicted by a jury in the district court of De Baca county of assault with a deadly weapon and sentenced to a term of years in the penitentiary. He seeks a new trial through the medium of an appeal here prosecuted, predicating the same upon several alleged errors claimed to have been committed against him at the trial.

The deadly weapon charged to have been used was a certain rock identified at the trial as ¾ths of an inch thick, 4 inches long, and 3 inches wide. It was introduced in evidence and exhibited to the jury.

The evidence disclosed that a companion of the defendant called the prosecuting witness from a drug store in the town of Ft. Sumner on the night of May 8, 1931. Once outside the store he was accosted by the defendant and invited around to the side of the store. The prosecuting witness testified that, almost immediately after turning the corner of the drug store, the defendant told him they were going to "have a hell of a fight"; that he replied, no, there was nothing to fight about. He further testified that about that moment he was struck on the cheek bone; that he did not see the blow descending before it landed; and that it made "quite a skinned place or cut place there." According to another state's witness, a deputy sheriff who witnessed the encounter, there were some preliminary words by defendant about some "lies he (prosecuting witness) was supposed to have told a girl about him" (defendant). This

witness saw the defendant strike the prosecuting witness the blow which knocked the latter to his hands and knees. Just as he fell this witness testified he saw a rock hit on the concrete walk, bounce and come to a stop; that he picked it up, placed it in his pocket, and later gave it to the sheriff, who preserved it for the trial. He testified that he never at any time saw the rock in the hands of the defendant, but knew the prosecuting witness had been hit with something, and he thought it was knucks until he saw the rock fall on the sidewalk and "figured then it was the rock."

It also appeared from the testimony of this witness that the prosecuting witness bled some following the encounter and was in an "addled condition." The sheriff who received the rock in question from the hands of his deputy some thirty minutes following the encounter and first examined it next morning testified there was a little blood on it then.

The defendant denied having used a rock, claiming to have struck his adversary only with his fist. The injury was slight and was such as might have been inflicted either by a rock or by a blow with the closed fist. While defendant's counsel questions the sufficiency of the evidence to establish that a rock was used, there is circumstantially enough evidence to support a finding that it was. Such a matter may be established circumstantially. Regan v. State, 46 Wis. 256, 50 N. W. 287.

Two points are principally relied upon for reversal. One of them, that a rock not being included in either class of deadly weapons defined in the statute, is not per se a deadly weapon, and, when charged so to be, must be proven such, the same as any other material fact. That no such proof was made here. The statute defining deadly weapons is section 35-3407, Comp. 1929. After enumerating certain types of deadly weapons, such as pistols, daggers, bowie-knives, etc., it concludes: "Also slungshots, bludgeons or any other deadly weapons with which dangerous wounds can be inflicted.

Where the instrument used is not one declared by the statute to be a deadly weapon, it is ordinarily a question for the jury to determine whether it is so, considering the character of the instrument and the manner of its use. 2 Wharton's Criminal Law (11th Ed.) § 848, p. 1069; Commonwealth v. Duncan, 91 Ky. 592, 16 S. W. 530; State v. Schumann, 187 Iowa, 1212, 175 N. W. 75; State v. Sims, 80 Miss. 381, 31 So. 907; State v. Dineen, 10 Minn. 407 (Gil. 325). Of course, if the alleged weapon is not defined by the statute as deadly, a case may exist where, from the ordinary harmless character of such instrument considered in the light of its claimed use, the court can say as a matter of law that it was not, on the occasion and under the circumstances shown, a deadly weapon.

Here the manner of its use was shown, if the jury chose to believe it was used at all. The rock itself was exhibited and passed amongst the jurors, thus enabling them to know its dimensions, weight, sharpness of its edges, and potentiality for infliction of dangerous wounds from the manner in which it

was claimed to have been used. It was not essential to conviction that a dangerous wound should actually have been inflicted. Though the evidence was not very strong, considering size of rock, proximity of parties and manner of its claimed use, we are not prepared to say the jury could not within its legitimate province find the same to be a deadly weapon.

■■ The second of the two points chiefly relied upon is that the court permitted the state to exceed the bounds of legitimate cross-examination touching the commission of other offenses by the accused. We think there is merit in this point requiring a reversal. The appellant barely preserves the point, but a careful examination of the proceedings satisfies us that he has done so, and that the defendant was undoubtedly prejudiced by the extent to which the court permitted the district attorney to cross-examine defendant regarding the details of another crime of which defendant had been convicted. The details of the other crime, statutory rape, were peculiarly calculated to inflame the minds of the jurors against the defendant.

When first cross-examined by the state, the defendant, over an untenable objection of his counsel to the question whether he had ever been convicted of a felony, replied that he had not, but had pleaded guilty to a felony under promise of a suspended sentence which he failed to get. He was not then asked the name of the felony. Questioned, he admitted he had only recently completed a term in the penitentiary for this offense. The mat-

ter was not pressed further at the time. When the defense had rested, the state recalled defendant obviously for the sole purpose of further developing this subject by additional cross-examination and the matter was immediately gone into. The closeness of the question whether defendant's counsel has preserved the point lies in the fact that he permitted the district attorney to propound and the defendant to answer without objection some of the most objectionable inquiries. Finally, however, after two or three questions (subject to objection as improperly developing details of another offense, but actually asked and answered without objection), defendant's counsel interposed a proper objection questioning the state's right to pursue the matter. This objection the court overruled and the cross-examination proceeded. And still later another witness, a former sheriff, was called and interrogated regarding the circumstances of defendant's sentence for the other offense.

The Attorney General defends against this point on the authority of section 45-606, Comp. 1929, authorizing proof of former conviction of a felony or misdemeanor for purposes of impeachment, and this either by questioning the witness, or by a certified copy of certain parts of the indictment and conviction. But as stated in the syllabus to State v. Roybal, 33 N. M. 540, 273 P. 919, under this statute: "The fact of the conviction of the witness, the name of the particular felony or misdemeanor of which the witness had been convicted, may be shown. Beyond this the examination should not go."

Except for purposes of impeachment, and the proof confined then within the narrow limits indicated by the statement just quoted, the general rule is that proof of other crimes is inadmissible, and the usual prejudicial character of such evidence is readily conceded by all courts and text-writers. Of course, there are well defined exceptions, as where the proof of other crimes tends to establish intent, motive, absence of mistake or accident, common scheme and plan, or identity of the person of the accused on trial. State v. Bassett, 26 N. M. 477, 194 P. 867. No contention is had that the proof here made was for any other purpose than that of impeachment.

The inherent danger in such evidence lies in the fact that the jury may convict the defendant of the offense on trial through a belief that he is a person likely to have committed it, as shown by proof of his commission of other crimes. Here it legitimately could have no such probative value, and thus introduced unsound reason and logic and a false issue into the trial. Furthermore, the fact of former conviction of another offense having already been shown in permissible impeachment of defendant, to compel him on cross-examination to go into details of such offense, a sex crime, both the commission and details of which were without probative value on the question of his guilt or innocence of the offense charged, exposed him at once to the prejudice almost certain to follow a recital of details of such an offense.

When, therefore, a proper objection was interposed and overruled in the presence of the jury, and the state permitted to pursue the matter further, it was well calculated to impress the jury that the defendant's conviction of the former offense had some probative value on his guilt or innocence of the offense charged. Even though improper cross-examination had already occurred without objection, defendant's counsel upon apprehending the danger was not compelled to sit silently by and see the prejudice accentuated and magnified. The objection though tardily urged should have been sustained when made.

In view of the usual prejudicial character of this kind of testimony, prosecuting officers, when employing it for impeachment purposes against a defendant, or any other witness as for that matter, should make serious effort to restrict the cross-examination within legitimate bounds. It should not go beyond proof of the former conviction and the name of the offense, if the latter is desired to be shown. The limit of the state's right under the statute is pointed out in the syllabus to State v. Roybal, supra, and it will be well to take the language of the fourth paragraph of the syllabus to the official report of that case as a guide under similar circumstances.

Other points are relied upon and argued, but we find them without merit, and it is unnecessary to discuss them. For the reasons stated the judgment must be reversed and a new trial awarded.

It is so ordered.

BICKLEY, C. J., and WATSON, J., concur.

PARKER and HUDSPETH, JJ., did not participate.