1999-NMCA-023

973 P.2d 861

**STATE of New Mexico,
Plaintiff–Appellee,**

v.

**Clarence MONTANO, Defendant–
Appellant.**

**No. 18563.**

Court of Appeals of New Mexico.

Dec. 16, 1998.

Certiorari Denied, No. 25,533, Jan. 29, 1999.

Tom Udall, Attorney General, Margaret McLean, Assistant Attorney General, Santa Fe, for Appellee.

Phyllis H. Subin, Chief Public Defender, Carolyn R. Glick, Assistant Appellate Defender, Santa Fe, for Appellant.

## OPINION

WECHSLER, Judge.

{1} Defendant Clarence Montano appeals his conviction of aggravated battery against a household member with a deadly weapon contrary to NMSA 1978, § 30–3–16 (1995) arguing that: (1) as a matter of law, a brick wall cannot be a deadly weapon; and (2) the district court did not properly instruct the jury on the elements of the crime. We hold that, as a matter of law, a brick wall can be a deadly weapon because it is a factual question for the jury to decide. We agree that the jury instruction was in error and reverse Defendant's conviction.

*Facts*

{2} Defendant and his girlfriend, Evangeline Wehausen (victim), both homeless, drank heavily throughout the day of January 5, 1996. Late that day, while walking along Broadway Avenue in Albuquerque, Defendant and the victim argued. Defendant shoved the victim, then grabbed her by the neck and pulled her along the sidewalk to the Salvation Army Building. Defendant next proceeded to shove or bang the victim's head against the Salvation Army Building brick wall two or three times. After the victim fell to the ground, Defendant hit her with his fist and kicked her.

{3} The jury convicted Defendant on one count of aggravated battery against a household member with a deadly weapon, a third degree felony, and two counts of aggravated battery. Defendant appeals only his conviction of aggravated battery against a household member with a deadly weapon.

*Whether a Wall Can Be a Deadly Weapon*

{4} Defendant argues that a brick wall cannot be a deadly weapon as a matter of law because it is a nonmovable, nonwieldable object, which is part of its existing surroundings. According to Defendant, the definition of "deadly weapon" in NMSA 1978, § 30–1–12(B) (1963) contemplates only nonstationary, wieldable objects. We disagree.

{5} The legislature defined "deadly weapon" as

any firearm, whether loaded or unloaded; or any weapon which is capable of producing death or great bodily harm, including but not restricted to any types of daggers, brass knuckles, switchblade knives, bowie knives, ponairds, butcher knives, dirk knives and all such weapons with which dangerous cuts can be given, or with which dangerous thrusts can be inflicted, including swordcanes, and any kind of sharp pointed canes, also slingshots, slung shots, bludgeons; or any other weapons with which dangerous wounds can be inflicted.

Section 30–1–12(B). Under this definition, an object not listed can be a deadly weapon if it fits within the description of "any other weapons with which dangerous wounds can be inflicted." *Id.* Black's Law Dictionary 1593 (6th ed.1990) defines "weapon" as "[a]n instrument of offensive or defensive combat, or anything used, or designed to be used, in destroying, defeating, threatening, or injuring a person." This definition of "weapon" is broad enough to encompass a brick wall. Because of its composition, one can inflict injury and dangerous wounds with a brick wall. As a consequence, we see no reason to preclude a brick wall from the definition of "deadly weapon."

{6} Our Courts have long reserved for the fact finder the question of whether an object not specifically listed by statute, when used by a defendant in committing a crime, is a deadly weapon. *See State v. Conwell,* 36 N.M. 253, 255, 13 P.2d 554, 555 (1932); *State v. Candelaria,* 97 N.M. 64, 65, 636 P.2d 883, 884 (Ct.App.1981); *State v. Gonzales,* 85

N.M. 780, 781, 517 P.2d 1306, 1307 (Ct.App. 1973); *see also State v. Blea*, 100 N.M. 237, 238–39, 668 P.2d 1114, 1115–16 (Ct.App.1983) (fact finder determines whether an object is a deadly weapon if not listed in local ordinance). The determination by the fact finder depends upon the evidence presented about the object and its manner of use. *See id.* In *Conwell*, the Court upheld the conviction of assault with a deadly weapon when the weapon was a rock approximately 3 by 4 inches and ¾ inch thick. *See Conwell*, 36 N.M. at 254, 256, 13 P.2d at 555, 556. While the Court questioned the fact that a rock that size could be a deadly weapon, it reasoned that it was a decision for the fact finder. *See id.* at 256, 13 P.2d at 556. "Where the instrument used is not one declared by the statute to be a deadly weapon, it is ordinarily a question for the jury to determine whether it is so, considering the character of the instrument and the manner of its use." *Id.* at 255, 13 P.2d at 555. This Court has upheld other convictions of crimes with the use of a deadly weapon not particularly named in Section 30–1–12(B). *See Blea*, 100 N.M. at 238, 668 P.2d at 1115 (holding ice-pick-like device can be a deadly weapon under local ordinance by examining the surrounding circumstances and the purposes for carrying the object); *Candelaria*, 97 N.M. at 65, 636 P.2d at 884 (affirming aggravated burglary with a deadly weapon conviction; jury could determine that a screwdriver was a deadly weapon based upon a description of the weapon and its use); *cf. Gonzales*, 85 N.M. at 781–82, 517 P.2d at 1307–08 (reversing conviction of robbery with a deadly weapon because insufficient evidence presented as to character and manner of use of a tire tool for jury to make a determination).

{7} Our decision not to foreclose a brick wall from the definition of "deadly weapon" is in accordance with several other jurisdictions which have examined whether a stationary object can be considered a deadly or dangerous weapon. *See, e.g., Commonwealth v.. Sexton*, 425 Mass. 146, 680 N.E.2d 23, 25 (1997) (concluding that concrete pavement qualifies as a "dangerous weapon"; the court looked at precedent stating that the determination of a dangerous weapon turned on "use," and Massachusetts courts "have repeatedly held that ordinarily innocuous items can be considered dangerous weapons when used in an improper and dangerous manner"); *People v. Galvin*, 65 N.Y.2d 761, 492 N.Y.S.2d 25, 26, 481 N.E.2d 565 (1985) (holding that a sidewalk can be a dangerous instrument); *People v. Coe*, 165 A.D.2d 721, 564 N.Y.S.2d 255, 256 (1990) (holding that a plate glass window can be a dangerous instrument because " '[i]t is the temporary use rather than the inherent vice of the object which brings it within the purview of the statute' " (quoting *People v. Carter*, 53 N.Y.2d 113, 440 N.Y.S.2d 607, 609, 423 N.E.2d 30 (1981))); *State v. Reed*, 101 Or. App. 277, 790 P.2d 551, 551 (1990) (upholding the defendant's conviction for assault in the second degree, where the defendant repeatedly struck the victim's head against a concrete sidewalk). *But see Edwards v. United States*, 583 A.2d 661, 664, 665 (D.C. 1990) (holding that stationary bathroom fixtures were not deadly weapons because of statutory definition and because they "were but a pre-existing part of the surroundings" and "not something which [the defendant] could possess or with which he could arm himself as he went looking for his victim"); *State v. Legendre*, 362 So.2d 570, 571–72 (La.1978) (holding that hitting a victim's head repeatedly against a concrete parking lot is not use of a dangerous weapon by any definition even assuming that the defendant had in fact been found to have used the concrete intentionally). *See generally* David J. Marchitelli, Annotation, *Stationary Object or Attached Fixture as Deadly or Dangerous Weapon for Purposes of Statute Aggravating Offenses such as Assault, Robbery, or Homicide*, 8 A.L.R.5th 775 (1992 & Supp.1998).

{8} We believe the distinction drawn by the wielding of a weapon creates an unsupportable difference. There is no doubt that if Defendant had used a single brick to hit the victim, he could be convicted of using a deadly weapon. We believe that common sense precludes the conclusion that because Defendant shoved the victim against a brick wall instead of hitting the victim with a brick, Defendant could not be convicted of use of a deadly weapon. We are not alone in failing to give value to any difference between the

two actions. In *Reed,* the Oregon Court of Appeals stated that it failed to see a distinction between a stationary or movable object. The court found no difference between a defendant using a concrete block to inflict injury and a defendant using a concrete wall to inflict injury, stating " '[w]hether the pitcher hits the stone or the stone hits the pitcher, it will be bad for the pitcher.' " *Reed,* 790 P.2d at 552 (quoting Miguel de Cervantes, *Don Quixote,* Part II, ch. 43 (1615)). While holding to the contrary, the *Edwards* court found fault with the deadly weapon statute as written, and noted the absurdity of the situation that if the defendant had detached the bathroom fixtures he used to injure the victim and struck the victim with the fixtures, "there would be no question that he would have been armed with a dangerous weapon within the meaning of [the statute]." *Edwards,* 583 A.2d at 667. Instead of drawing a distinction based on wielding, we believe that the fact finder ascertains from the attending facts whether the defendant commits the crime with a deadly weapon.

{9} We also believe that distinguishing between whether the object was wielded or not does not comport with the statute prohibiting aggravated battery against a household member. The statute states "[w]hoever commits aggravated battery against a household member by inflicting great bodily harm or doing so with a deadly weapon or doing so in any manner whereby great bodily harm or death can be inflicted, is guilty of a third degree felony." Section 30-3-16(C). It allows for an enhanced conviction when the victim suffers great bodily harm or when great bodily harm or death can result without specifically requiring the use of a deadly weapon. Thus, an enhanced penalty can result when use of an object or instrument increases the severity of injury to the victim to the statutorily-required levels. The purpose of aggravating the charge and enhancing the sentence for use of a weapon is to minimize injury to human beings no matter how the injury is inflicted and discourage people from using objects to injure another. *See State v. Rodriguez,* 113 N.M. 767, 772, 833 P.2d 244, 249 (Ct.App.1992) ("The aggravated assault statute is aimed at deterring

aggression against other people in which the use of deadly weapons is involved."). Including a brick wall as potentially being a deadly weapon meets these purposes.

{10} Moreover, we do not believe that we should preclude a brick wall from being a potentially deadly weapon because it is not what one thinks of when visualizing a deadly weapon in the traditional sense. The dissent in *Legendre* discussed that while the Louisiana statutory definition of "dangerous instrument" can be broad enough to include a concrete parking lot, the majority foreclosed that argument based upon preconceived notions of what was a dangerous weapon. *See Legendre,* 362 So.2d at 572 (Dennis, J., dissenting). The *Reed* court also noted that a concrete sidewalk may not come to mind when one thinks of a deadly weapon, but that any object "no matter how harmless it may appear when used for its customary purposes, becomes a dangerous weapon when used in a manner that renders it capable of causing serious physical injury." *Reed,* 790 P.2d at 551–52. We agree with this reasoning.

{11} Defendant argues that our decisions in *State v. Foulenfont,* 119 N.M. 788, 895 P.2d 1329 (Ct.App.1995), and *State v. Bybee,* 109 N.M. 44, 781 P.2d 316 (Ct.App. 1989), foreclose this Court from concluding that a brick wall can be a deadly weapon because those cases applied statutory construction principles to determine that an enclosed fence and a vending machine could not be a "structure" for purposes of the burglary statute, NMSA 1978, § 30-16-3(B) (1971). *See Foulenfont,* 119 N.M. at 790–91, 895 P.2d at 1331–32; *Bybee,* 109 N.M. at 45–46, 781 P.2d at 317–18. *Foulenfont* and *Bybee* are not on point, however, because the issue in determining whether an object used by a defendant is a deadly weapon hinges on the character of the object and the manner of its use as the fact finder determines. *See Conwell,* 36 N.M. at 255, 13 P.2d at 555. In a burglary case, the fact finder does not determine whether something is a "structure" within the meaning of the burglary statute. *See* UJI 14–1630 NMRA 1998; UJI 14–1631 NMRA 1998. The fact that something is a

,structure is incidental to the fact finder's determination of guilt or innocence.

{12} In summary, we decline Defendant's argument that a brick wall cannot be a deadly weapon as a matter of law and turn to whether the district court correctly instructed the jury concerning its fact-finding obligation.

*The Jury Instruction Given Was Erroneous*

{13} Defendant argues that the district court improperly instructed the jury on the aggravated battery with a deadly weapon charge by creating an ambiguity as to whether the judge or the jury decided if the brick wall was a deadly weapon.

{14} The district court instructed the jury in pertinent part as follows:

> For you to find the defendant guilty of aggravated battery against a household member with a deadly weapon as charged in Count I, the state must prove to your satisfaction beyond a reasonable doubt each of the following elements of the crime:
>
> 1. The defendant slammed or hit [victim's] head with a brick wall; a brick wall is an instrument or object which, when used as a weapon, could cause death or very serious injury.

The instruction given does not follow the instruction and use note in UJI 14–322 NMRA 1998. The relevant portion of UJI 14–322 reads:

> For you to find the defendant guilty of aggravated battery with a deadly weapon [as charged in Count ............][1], the state must prove to your satisfaction beyond a reasonable doubt each of the following elements of the crime:
> 1. The defendant........................ ...... 2
> describe act and name victim
> with .................................... 3;

The Use Note following UJI 14–322 provides instruction on how to fill in the blanks. It states:

1. Insert the count number if more than one count is charged.

2. Use laymen's language to describe the touching or application of force.

3. Insert the name of the weapon when the instrument is a deadly weapon as defined in Section 30–1–12 B NMSA 1978, or use the phrase "an instrument or object which, when used as a weapon, could cause death or very serious injury."

{15} A brick wall is not one of the items listed in Section 30–1–12(B) as a deadly weapon. Therefore, per Use Note Number 3, the instruction should have read: "The defendant slammed or hit [victim's] head with an instrument or object, which when used as a weapon, could cause death or very serious injury." Thus, we must determine whether inserting the phrase "a brick wall; a brick wall is" in addition to the language instructed by the Use Note constituted reversible error. We hold that it did.

{16} The State contends that since the definition of "deadly weapon" from Section 30–1–12(B) was also provided as a jury instruction, and the only real difference between the jury instruction used and the UJI is punctuation and phrasing, there was no error. We disagree. As discussed earlier in this opinion, it is the province of the jury to determine whether the instrument or object used to inflict injury was a deadly weapon. *See Conwell*, 36 N.M. at 255, 13 P.2d at 555; *accord Gonzales*, 85 N.M. at 781, 517 P.2d at 1307. The phrasing of the district court's instruction could lead the jury to conclude that rather than having within its province the decision of whether the brick wall was a deadly weapon, the court instructed it that it was indeed a deadly weapon. *See State v. Bonham*, 1998–NMCA–178, ¶¶ 25–28, 126 N.M. 382, 970 P.2d 154 (Ct.App.1998).

{17} In *Bonham*, this Court instructed the jury that the defendant applied force to the victim "with a hot plate or trivet frame, an instrument or object which, when used as a weapon, could cause death or very serious injury." *Id.* ¶ 26 (emphasis deleted). Referencing William A. Sabin, *The Gregg Reference Manual* ¶ 148 (8th ed.1996), we applied basic rules of grammar and concluded that the phrase an "instrument or object which, when used as a weapon, could cause death or very serious injury" was an appositive expression that explained "hot plate or trivet frame." *Bonham*, 1998–NMCA–178, ¶ 27.

The same error took place in this case. The properly given instruction does not name the instrument or object, but allows the jury to determine whether an instrument or object given its character and manner of use, was used as a deadly weapon. *See Gonzales,* 85 N.M. at 781, 517 P.2d at 1307.

{18} Given the grammatical structure of the sentence, it is unclear whether the jury decided that the brick wall was a deadly weapon or whether the district court instructed the jury that the brick wall was a deadly weapon. Such ambiguity constitutes reversible error. *See State v. Sosa,* 1997–NMSC–032, ¶ 25, 123 N.M. 564, 943 P.2d 1017 (citation omitted) ("If a jury receives an instruction which is subject to more than one interpretation, the ambiguity may be clarified by another part of the jury instructions. Use of an ambiguous jury instruction will constitute reversible error where a reasonable juror would have been confused or misdirected by that instruction."); *accord State v. Parish,* 118 N.M. 39, 42–44, 878 P.2d 988, 991–93 (1994). The court's inclusion of the definition of "deadly weapon" as another jury instruction did not clarify the ambiguous instruction. The language of Section 30–1–12(B) merely lists items which have been predefined to be deadly weapons, followed by catch-all language "any other weapons with which dangerous wounds can be inflicted." This definition does not instruct the jury that it must determine whether the brick wall could be a deadly weapon given its character and manner of use.

*Conclusion*

{19} We conclude that determination of whether a brick wall is a deadly weapon is a question of fact for the jury or fact finder to determine, given the evidence presented as to the manner and use of the wall. We reverse Defendant's conviction because of the erroneous jury instruction and remand to the district court.

{20} IT IS SO ORDERED.

ALARID and APODACA, JJ., concur.

